IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73132-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| EDILBERTO GUZMAN-MORALES, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: June 20, 2016 |
| | ) | |

Cox, J. – "[A] defendant is entitled to an instruction on self-defense if there is some evidence demonstrating self-defense."[1] Edilberto Guzman-Morales appeals his conviction for second-degree assault with a deadly weapon, arguing that the court abused its discretion by refusing to instruct the jury on self-defense. Because he failed to produce any evidence indicating that he acted in self-defense, the court properly denied his request. We affirm.

The State charged Guzman-Morales with second-degree assault with a deadly weapon based on an altercation in a nightclub. At trial, a security guard testified that he noticed an argument between Guzman-Morales and a group of other customers. When the security guard approached him, Guzman-Morales complained about someone spilling his beer. The guard asked Guzman-Morales to go outside to talk to him, but Guzman-Morales refused. The guard then offered to buy Guzman-Morales a beer and to refund his cover charge if he came

---

[1] State v. Werner, 170 Wn.2d 333, 336-37, 241 P.3d 410 (2010).

outside. When Guzman-Morales refused again, the security guard placed his arm on Guzman-Morales to guide him outside. Guzman-Morales then grabbed the guard's shirt and told him that he would regret it.

But Guzman-Morales nevertheless began walking towards the exit with the guard. On their way, Guzman-Morales stopped, turned around, grabbed the guard, and said "I'm a dangerous man, and this is going to end very badly for you." The guard resumed guiding Guzman-Morales to the exit.

A few feet from the door, the guard felt a sensation in his groin like being hit with a hot hammer. He turned and saw Guzman-Morales had a knife in his hand. He saw Guzman-Morales moving the knife towards him again, so he placed Guzman-Morales in a chokehold and tried to avoid the knife.

The guard yelled "he's got a knife" and "I have just been stabbed." He continued struggling with Guzman-Morales and yelling for help until another guard hit Guzman-Morales in the face, causing him to drop the knife.

An officer responding to the scene arrested Guzman-Morales. Guzman-Morales told the arresting officer that "he was scared because people were hitting him." He also mentioned being hit by a bottle.

Guzman-Morales also testified at trial. He testified that he remembered walking in the nightclub and being hit on the back of the head. He heard "glass splashing" and was not sure if he had been hit with a bottle or had his beer knocked out of his hand. After that point, he "lost it" and "blacked out." He further testified:

> I don't remember much other than that until when I was in the
> police car, a few flashbacks that I get in my head from when I was

2

walking from, and I was getting choked, and the next day, I woke up in jail, and I didn't know what had happened the day before, the night before.[2]

He later testified that he blacked out after the security guard offered to buy him a drink.

At trial, the State introduced security footage from the nightclub. The footage shows the security guard escorting Guzman-Morales towards the exit. As he does so, Guzman-Morales swings his hand towards the guard. The security guard identified this as the moment he was stabbed. The guard then puts Guzman-Morales in a chokehold, and the struggle moves outside the exit, mostly out of the camera's view.

The footage was consistent with the guard's description of when and where he was stabbed. But the footage appeared to show Guzman-Morales moving his hand towards the guard's right hip, while the guard's stab wound was located on his inner right thigh.

The State's forensic video analyst explained that the video was taken at an angle, and "the depth perception and the two dimensional image can be thrown off." Thus, the knife blade could "possibly cover that area between the wound and where we see the hand going to." This witness also explained that the guard's clothing could have changed the knife's trajectory.

At the close of evidence, Guzman-Morales requested a self-defense instruction. He argued that because the security footage appeared to show

---

2 Report of Proceedings (January 14, 2015) at 336-37.

Guzman-Morales striking the guard's hip rather than his thigh, the jury could conclude that Guzman-Morales stabbed the guard at a different, later point in time, when he was in a chokehold.

The trial court declined to instruct the jury on self-defense, determining that there was no evidence of self-defense.

The jury found Guzman-Morales guilty as charged and the trial court sentenced him.

Guzman-Morales appeals.

## SELF-DEFENSE INSTRUCTION

Guzman-Morales argues that the trial court erred by declining to instruct the jury on self-defense. We disagree.

A defendant is entitled to an instruction on self-defense if some evidence demonstrates self-defense.[3] The defendant bears the initial burden of producing some evidence that he or she acted in self-defense.[4] To establish self-defense, "'there must be evidence that (1) the defendant subjectively feared that he was in imminent danger of death or great bodily harm; (2) this belief was objectively reasonable; [and] (3) the defendant exercised no greater force than was reasonably necessary.'"[5]

---

[3] Werner, 170 Wn.2d at 336-37.

[4] State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999).

[5] Werner, 170 Wn.2d at 337 (quoting State v. Callahan, 87 Wn. App. 925, 929, 943 P.2d 676 (1997)).

"The trial court is justified in denying a request for a self-defense instruction only where no credible evidence appears in the record to support a defendant's claim of self-defense."[6]

When the trial court declines to instruct the jury on self-defense based on a lack of evidence, we review for abuse of discretion.[7]

Here, the court properly denied Guzman-Morales's request for a self-defense instruction. No evidence suggested that he feared he was in danger of bodily harm when he stabbed the guard. Additionally, there was no evidence that such a belief would be reasonable, or that Guzman-Morales's use of force was reasonable.

Guzman-Morales argues that his statement "that he was scared, combined with the fact that he was choked by [the security guard], was sufficient to raise the issue of self-defense." This is insufficient because no evidence at trial suggested that Guzman-Morales stabbed the guard after he was placed in a chokehold, rather than before.

Guzman-Morales argues that the security footage was evidence that he stabbed the guard after being placed in a chokehold. This argument is unpersuasive.

The fact that the security footage does not conclusively show Guzman-Morales stabbing the guard is immaterial. This footage was not evidence

---

[6] State v. McCullum, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983).

[7] State v. Read, 147 Wn.2d 238, 243, 53 P.3d 26 (2002).

suggesting that Guzman-Morales acted in self-defense. Rather it "support[ed]," without conclusively corroborating, the guard's testimony that Guzman-Morales stabbed him before he was put in a chokehold. Thus, this evidence did not create an inference that Guzman-Morales acted in self-defense.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Guzman-Morales filed a statement of grounds for review, arguing that he received ineffective assistance of counsel. We disagree.

The right to counsel includes the right to effective assistance of counsel.[8] One component of an ineffective assistance of counsel claim is deficient performance.[9] This requires showing that counsel's performance fell below "an objective standard of reasonableness."[10] Washington courts are "highly deferential to counsel's performance."[11] We presume that counsel provided effective representation and require the defendant to prove that no "legitimate strategic or tactical reasons" exist.[12]

Guzman-Morales first argues that his counsel's performance was deficient because counsel did not sufficiently examine him on the alleged assault.

---

[8] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Crawford, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006).

[9] Strickland, 466 U.S. at 687.

[10] Id. at 688.

[11] In re Pers. Restraint of Gomez, 180 Wn.2d 337, 348, 325 P.3d 142 (2014).

[12] State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

Specifically, he objects to counsel's failure to ask him why and when he used the knife.

But Guzman-Morales had already testified that he had "blacked out" and did not remember the events of the night after the moment when the security guard offered to buy him a drink. Nothing in the record suggests that it was not a legitimate tactical decision for counsel to choose not to ask specific questions about events Guzman-Morales stated he could not remember. Thus, counsel's performance was not deficient.

Guzman-Morales also argues that his counsel was deficient because he failed to investigate or call a witness who was present at the alleged crime. But the record on appeal is silent on this issue. Thus, we cannot review this issue on direct appeal.[13] "The appropriate means of raising matters outside our record is through the filing of a personal restraint petition."[14]

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

_____

Becker, J.

---

[13] McFarland, 127 Wn.2d at 337-38.

[14] State v. Hart, 188 Wn. App. 453, 466, 353 P.3d 253 (2015).