IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGON, | ) | No. 76894-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MICHAEL ESPINOSA, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: April 8, 2019 |

HAZELRIGG-HERNANDEZ, J. — Michael Espinosa shot and killed Martin Douglas on May 23, 2015. Espinosa claimed he acted in self-defense and defense of another. The court instructed the jury regarding justifiable homicide and informed the jury that the homicide was not justified if the defendant was the aggressor in the confrontation. A jury found Espinosa guilty of murder. Espinosa seeks reversal on multiple grounds. Because we find that the given instructions did not make the law of self-defense manifest to the jury, we reverse.

## FACTS

On the night of May 22, 2015, Martin Douglas and Justina Houston returned from a casino to Houston's home in Federal Way. Houston convinced Douglas to lend her his car for an hour or two while he stayed at her house. She and her roommate, Yesenia Cuellar, took Cuellar's infant daughter and went to meet Michael Espinosa. They picked up Espinosa and a friend of his, Alex Delker, and

went to get methamphetamine. They obtained methamphetamine and smoked it at the home of Cuellar's friend.

Around 1:00 a.m. on March 23, 2015, Douglas began calling Houston and sending her angry text messages demanding that she return his car so that he could go home. When Houston, Cuellar, Espinosa, and Delker returned to the house, Douglas was outside. He approached the car yelling curses and threats. Cuellar and Houston were yelling back at him. Espinosa fired one shot either at the ground or in the air and a second shot at Douglas. The second shot hit Douglas in the head and he died from the wound.

Espinosa was charged with murder in the second degree and unlawful possession of a firearm in the second degree. The State also alleged that both charges involved the aggravating factor of rapid recidivism. Espinosa pled guilty to the unlawful possession of a firearm charge and admitted the rapid recidivism aggravating factor.

At trial, the key witnesses presented different versions of the events leading up to the homicide. Houston testified that she felt that Douglas had moved threateningly toward Cuellar but he never made a motion like he was going to injure her and the baby. She testified that she never feared for her safety. Cuellar testified that Douglas tried to hit her before she went inside to put down her child but did not touch her. She testified that she was coming back down the stairs when she heard the two gunshots.

Espinosa testified that he saw Douglas make a motion and thought he was going to punch Cuellar while she was holding her child. He said that he saw

Douglas pull his arm back to hit Cuellar, then drew the gun from his waistband, cocked it, and fired a round into the air before Douglas landed the blow. Espinosa said that he drew his weapon and fired this "warning shot" to distract Douglas and keep him from striking Cuellar and her child. Espinosa testified that Douglas then turned and began advancing toward him and Espinosa shot at him because he feared for his life.

Espinosa's proposed jury instructions included both a general self-defense instruction based on WPIC 17.02 and a justifiable homicide instruction based on WPIC 16.02. The State moved to preclude the general self-defense instruction offered by Espinosa. The State argued that the justifiable homicide instruction stated the applicable legal standard because it contained the heightened requirement that the defendant reasonably believe the victim intended to inflict death or great bodily injury. Espinosa responded that he had proposed both instructions because, although he conceded that the justifiable homicide instruction was appropriate for the shot that led to Douglas' death, there could be a question in the minds of the jury regarding whether the warning shot was a lawful use of force. Espinosa argued that the general self-defense instruction was appropriate to let the jury know that Espinosa was using lawful force in defense of Cuellar and her child. The State argued in response that Espinosa was not charged with any crime stemming from the warning shot and an instruction regarding the lawfulness of that shot would constitute an impermissible comment on the evidence.

The court found that Espinosa had presented some evidence of his fear of death or great bodily harm before shooting Douglas and allowed the instruction on justifiable homicide. The court declined to instruct the jury regarding general self-defense because the State had not charged Espinosa with any crime in firing the warning shot and the jury was not being asked to determine the legality of that shot. The court noted that counsel was free to argue the context of the first shot in closing arguments.

The State also moved to allow an instruction commonly referred to as a "first aggressor" instruction, which would instruct the jury that self-defense was not available as a defense to the charge if the defendant provoked or commenced the altercation. Espinosa opposed this motion, arguing that the instruction was not warranted by the facts because he intervened in the situation to defend Cuellar. In the alternative, he renewed his request for a general self-defense instruction in addition to the aggressor instruction so that the jury could "understand whether or not [Espinosa] really was a first aggressor in light of his legal right to defend other people."

The court found that there was conflicting evidence regarding the circumstances surrounding the shooting and discussed the cases it relied upon for its interpretation of the law. The court cited State v. Heath, for the proposition that an aggressor instruction is appropriate if there is any evidence that the defendant provoked a fight and even if the victim threw the first blow. 35 Wn. App. 269, 666 P.2d 922 (1983). The court noted that in State v. Wingate, the Supreme Court said the instruction is proper if there is conflicting evidence as to whether the

defendant's conduct precipitated the confrontation. 155 Wn.2d 817, 122 P.3d 908 (2005). Finally, in State v. Hardy, the court noted that the instruction was appropriate where evidence established that the defendant was an aggressor and "the cause of affray [was] sufficient to raise a jury question on the issue." 44 Wn. App. 477, 722 P.2d 872 (1986). Therefore, the court concluded that the aggressor instruction was appropriate because it properly directed the jury to determine whether Espinosa's acts precipitated a confrontation with Douglas.

The court did not agree with defense counsel that allowing an aggressor instruction necessitated a general self-defense instruction, reiterating that Espinosa was not charged with assault from the first shot. The court noted that the language of the aggressor instruction should reflect the case law requiring an intentional action by the defendant rather than an unlawful action. Espinosa objected to the inclusion of this instruction. The trial court subsequently instructed the jury as follows:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon kill another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

During the State's closing argument, the prosecutor emphasized to the jury that the aggressor instruction related specifically to the confrontation between Espinosa and Douglas. The State framed the issue to the jury this way:

> [W]hen it comes to talking about the first aggressor, we are talking about the altercation between the defendant and Mr. Douglas. Did the defendant provoke Mr. Douglas, thereby causing him to have to act in self-defense? And if your answer to this is yes, that the defendant was the first aggressor in this case, he does not get to

claim that the homicide was justifiable. You cannot create the need to shoot someone with a deadly weapon and then claim that you had to do it.

The prosecutor argued that Douglas was not otherwise engaged with Espinosa in any way until Espinosa pulled out his gun and fired a shot. She asked the jury to "think about who started it" and whether "firing a shot in the vicinity of someone who's not looking at you and has no idea what direction that shot might be going" created the need for Espinosa to shoot Douglas. On rebuttal, the State said that the only way Espinosa would not be the first aggressor would be if the jury believed that Douglas was about to strike Cuellar and that was the reason that Espinosa fired the warning shot.

The jury found Espinosa guilty of murder in the second degree, found that he was armed with a firearm at the time of the commission of the crime, and found that he committed the crime shortly after being released from incarceration. Espinosa filed a motion for a new trial and to interview jurors based on alleged prejudicial jury misconduct. The court denied this motion, finding that there was no misconduct by the jury. The court imposed an exceptional sentence of 477 months of total confinement. Espinosa timely appealed.

## ANALYSIS

Espinosa contends that the aggressor jury instruction was not supported by the evidence and effectively denied Espinosa his right to act in self-defense. He also contends that the court's instruction on self-defense was inadequate because it did not include a complete explanation of "the law entitling a person to use force in response to an imminent assault." Espinosa argued that these errors diluted the

State's burden to disprove self-defense and denied Espinosa his constitutional right to present a defense.

Jury instructions are generally sufficient where they are supported by substantial evidence, properly state the law, and allow the parties an opportunity to satisfactorily argue their theories of the case. State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). The adequacy of jury instructions is reviewed de novo. Id. A defendant is entitled to an instruction on his theory of the case if there is evidence to support that instruction. State v. Werner, 170 Wn.2d 333, 336, 241 P.3d 410 (2010). When read as a whole, the jury instructions must make the law of self-defense manifestly apparent to the average juror. State v. LeFaber, 128 Wn.2d 896, 900, 913 P.2d 369 (1996) (quoting State v. Allery, 101 Wn.2d 591, 594–95, 682 P.2d 312 (1984)), abrogated on other grounds by State v. O'Hara, 167 Wn.2d 91, 217 P.3d 756 (2009).

The court's refusal to instruct on a party's theory of the case when there is supporting evidence is reversible error if it prejudices the party. Werner, 170 Wn.2d at 337. Espinosa argues that the court erred in giving an aggressor instruction because the instruction was not supported by the evidence and was misleading to the jury. Espinosa also contends that the court erred in refusing to give an instruction regarding the general standard for self-defense or defense of others in addition to the instruction for justifiable homicide.

Use of force toward another person is lawful when "used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person . . . in case the force is not more

than is necessary." RCW 9A.16.020(3). In Washington, homicide is justifiable when committed in lawful self-defense or defense of another if it is reasonable for the person defending himself to believe that the other person intends to kill or inflict great personal injury and is in imminent danger of doing so. RCW 9A.16.050; State v. Walden, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997). Mere words alone are insufficient to create a reasonable apprehension of great bodily harm entitling a person to respond with lawful force in self-defense. State v. Riley, 137 Wn.2d 904, 912, 976 P.2d 624 (1999). Jurors must assess evidence of claims of self-defense or defense of others "from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees." State v. Janes, 121 Wn.2d 220, 238, 850 P.2d 495 (1993). A defendant is entitled to a jury instruction about justifiable homicide when he produces some evidence demonstrating self-defense or defense of another. Walden, 131 Wn.2d at 473.

A person who provoked an altercation in which he killed the other person cannot invoke the right of self-defense to justify or excuse the homicide. State v. Craig, 82 Wn.2d 777, 783, 514 P.2d 151 (1973). An aggressor instruction is appropriate when there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense. Riley, 137 Wn.2d at 909–10. The defendant's provoking act must be an intentional act that the jury could reasonably assume would provoke a belligerent response from the victim. State v. Birnel, 89 Wn. App. 459, 473, 949 P.2d 433 (1998). The provoking act does not need to be unlawful. See State v. Sullivan, 196 Wn. App. 277, 290–91, 383 P.3d 574 (2016). If there is conflicting evidence as to whether the

- 8 -

defendant's conduct provoked the conflict, an aggressor instruction is appropriate. Riley, 137 Wn.2d at 910. "While an aggressor instruction should be given where called for by the evidence," courts should use care in providing this instruction because "an aggressor instruction impacts a defendant's claim of self-defense, which the State has the burden of disproving beyond a reasonable doubt." Id. at 910 n.2.

Here, there was conflicting testimony about the events leading up to the warning shot. Although Espinosa testified that he fired the warning shot to keep Douglas from hitting Cuellar and her child, Cuellar testified that she was in the house when both shots were fired. Espinosa was not charged with assault in the second degree or any other crime based on the first shot. The lawfulness of Espinosa's first shot was not at issue. However, Espinosa states that his "theory of defense rested on his use of reasonable force in response to Mr. Douglas' initial aggression, coupled with his use of reasonable force when directly confronted by Mr. Douglas shortly thereafter." Under Espinosa's theory, the warning shot was a reasonable use of force in defense of Cuellar and therefore not an aggressive act.

Although there was conflicting testimony, the instructions as given impaired Espinosa's ability to fully argue his theory of the case. When the court gave the aggressor instruction but declined to give the instruction regarding lawful defense of another, it failed to make the law of self-defense manifestly clear to the jury. Although the lawfulness of the warning shot was not directly at issue because Espinosa was not charged with assault stemming from this shot, an instruction on lawful defense of another could have helped the jury to assess whether Espinosa

was the aggressor in the altercation. Without this instruction, the jury may not have known that Espinosa's intentional act could have been a lawful use of force rather than an act of aggression.

This instructional error was exacerbated by the State's closing argument that directed the jury to consider only the conflict between Douglas and Espinosa when deciding whether Espinosa was the aggressor who initiated the altercation. By arguing that the jury should disregard any evidence that Espinosa was acting in defense of Cuellar in its analysis of which party provoked the fight, the State removed the warning shot from the greater context of the situation. Even if the jury believed Espinosa's testimony in its entirety, the conclusion that the warning shot was the first act of aggression between Espinosa and Douglas was inescapable.

An error in jury instructions is presumed prejudicial unless it affirmatively appears to be harmless. Clausing, 147 Wn.2d at 628. Reversal is required unless the instructional error is "trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome." State v. Townsend, 142 Wn.2d 838, 848, 15 P.3d 145 (2001) (quoting State v. Golladay, 78 Wn.2d 121, 139, 470 P.2d 191 (1970)).

Here, we cannot affirmatively say that this error was harmless. The given instructions failed to make the law of self-defense manifest to the jury and impaired Espinosa's right to argue his complete theory of the case. Because self-defense was Espinosa's primary defense to the charge, this was not a trivial error and may have affected his substantial rights.

Because we have determined that the trial court erred in giving the aggressor instruction, we do not reach the issues of admission of evidence that Espinosa had previously used or possessed a firearm, alleged juror misconduct, the imposition of an exceptional sentence based on rapid recidivism, imposition of the DNA fee, or alleged Miranda violations.

Reversed.

WE CONCUR: