**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56948-5-II |
| Respondent, | |
| v. | |
| H.R.W., | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — H.R.W. appeals his adjudication of guilt for assault in the second degree. H.R.W. argues that insufficient evidence supports the juvenile court's adjudication of guilt because the findings of fact do not support the conclusion of law that the State disproved self-defense beyond a reasonable doubt. We affirm.

FACTS[1]

I.    FACTUAL BACKGROUND

H.R.W. and J.S. are students at Shelton High School. Both appear to be in reasonable physical condition. J.S. is a substantially larger person than H.R.W. J.S. is 6'3" and 309 pounds whereas H.R.W. weighs 108 pounds.

On September 20, 2021, H.R.W. and J.S. had a verbal altercation early in the school day—around second period—where H.R.W. called J.S. a homophobic slur. J.S. indicated that he himself

---

[1] The facts presented in this opinion are derived from the trial court's unchallenged findings of fact, which are verities on appeal. *State v. A.M.*, 163 Wn. App. 414, 419, 260 P.3d 229 (2011).

was a gay person. After this initial altercation, both H.R.W. and J.S. went to the school's office where J.S. wrote an incident report.

Later in the day—around fifth period—H.R.W. and J.S. were involved in a second altercation in the high school courtyard. The second altercation began with H.R.W. calling J.S. a homophobic slur and J.S. repeatedly saying "call me a [homophobic slur] one more time." Clerk's Papers (CP) at 37. J.S. then advanced towards H.R.W. and H.R.W. attempted to walk away. At some point, H.R.W. began to videotape J.S. on his cell phone. J.S. closely approached H.R.W. and H.R.W. extended his arm. In response, J.S. slapped H.R.W.

After J.S. slapped H.R.W., the boys tumbled to the ground with J.S. being on top of H.R.W. J.S. began to repeatedly strike H.R.W. J.S. was not armed with a weapon and did not threaten to use a weapon. But at some point, while J.S. was striking H.R.W., H.R.W. reached into his pocket, pulled out a knife, and flipped the blade open. The blade was approximately 2 inches in length. H.R.W. then stabbed J.S. six times within an eight second timespan.

J.S. got up off of H.R.W. after a teacher had arrived at the scene—this was approximately nine seconds after J.S. initially slapped H.R.W. H.R.W. believed that he stabbed J.S. in the neck when J.S. was getting up. H.R.W. did not respond to J.S.'s attack by pushing or punching back, but only by stabbing.

J.S. went to Mason General Hospital after the second altercation and was evaluated by Dr. Joseph Hoffman. Dr. Hoffman detailed each of the six stab wounds and indicated that the stab wound to J.S.'s neck created a probability of death. After treatment, J.S. was released from the hospital the same day.

H.R.W. only suffered minor injuries. Approximately 30 minutes after the altercation, H.R.W. posted a picture of himself on social media. The picture showed himself uninjured with the following caption: "I'm fine (emoji smiley face) [homophobic slur] can't hit hard." CP at 40.

Detective Jason Lawson contacted H.R.W. after visiting J.S. at the hospital. H.R.W. admitted to stabbing J.S., but claimed self-defense.

Prior to these altercations, H.R.W. and J.S. were not well acquainted with each other and had never spoken to each other. H.R.W. did not know of any particularly violent tendencies of J.S.

II.     PROCEDURAL HISTORY

The State charged H.R.W. with one count of assault in the first degree. Following a bench trial, the juvenile court entered findings of fact and conclusions of law, and concluded that H.R.W. was not guilty of assault in the first degree because he did not intend to inflict great bodily harm.

Instead, the juvenile court adjudicated H.R.W. guilty of the lesser included offense of assault in the second degree. The court concluded that H.R.W. had assaulted J.S. with a deadly weapon. The court also concluded that the State disproved self-defense beyond a reasonable doubt:

> 2.11 [H.R.W.] acting to defend himself in a reasonable way would have been lawful. However, since a reasonable person, standing in the shoes of [H.R.W.]—in a high school courtyard with teachers nearby—would not believe the fight was going to escalate into a life threatening altercation or an altercation where he would suffer great personal injury, [H.R.W.'s] decision to intentionally and immediately arm himself with a knife and repeatedly stab JS (even while JS was getting up after a teacher arrived) was entirely unreasonable and the State has proven the unreasonableness and unlawfulness of [H.R.W.'s] use of the knife beyond any reasonable doubt. As such [H.R.W.] is guilty of the lesser included offense of Assault in the Second Degree.

CP at 41-42.

3

The juvenile court imposed standard range sentence of 15 to 36 weeks for in-custody placement in a rehabilitation facility. H.R.W. appeals.

ANALYSIS

H.R.W. argues that insufficient evidence supports the juvenile court's adjudication of guilt because the findings of fact do not support the conclusion of law that the State disproved self-defense beyond a reasonable doubt. We disagree.

I.    STANDARD OF REVIEW

"When reviewing a challenge to the sufficiency of the evidence supporting an adjudication of guilt in a juvenile proceeding, 'we must decide whether substantial evidence supports the trial court's findings of fact and, in turn, whether the findings support the conclusions of law.'" *State v. K.H.-H.*, 188 Wn. App. 413, 417-18, 353 P.3d 661 (2015) (quoting *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007)). We review the juvenile court's conclusions of law de novo. *B.J.S.*, 140 Wn. App. at 97. "In doing so, we view the evidence in a light most favorable to the State, and we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *K.H.-H.*, 188 Wn. App. at 418. Unchallenged findings of fact are verities on appeal. *Id*.

II.   LEGAL PRINCIPLES

Under RCW 9A.36.021(1)(c), "[a] person is guilty of assault in the second degree if he or she . . . (c) [a]ssaults another with a deadly weapon." For purposes of this crime, a "deadly weapon" includes "any . . . weapon, device, instrument, article, or substance . . . as defined in this section, which, under the circumstances in which it is used . . . is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6). Here, H.R.W. does not dispute that the knife used was a deadly weapon.

Self-defense is an affirmative defense to the charge of assault in the second degree. *State v. Tullar*, 9 Wn. App. 2d 151, 156, 442 P.3d 620 (2019); RCW 9A.16.020(3). In Washington, the use of force is lawful when "used by a party about to be injured . . . in preventing or attempting to prevent an offense against his or her person . . . in case the force is not more than is necessary." RCW 9A.16.020(3). The term "necessary" means that "no reasonably effective alternative to the use of force appeared to exist and that the amount of force used was reasonable to effect the lawful purpose intended." RCW 9A.16.010(1). And the term "deadly force" means "the intentional application of force through the use of firearms or any other means reasonably likely to cause death or serious physical injury." RCW 9A.16.010(2). Here, H.R.W. appears to concede that he used deadly force to defend against J.S.'s attacks.

Once self-defense has been properly raised, the State bears the burden to prove the absence of self-defense beyond a reasonable doubt in order to sustain a finding of guilt. *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020). When evaluating the sufficiency of the evidence of self-defense, we must determine what a reasonably prudent person would do if standing in the defendant's shoes. *State v. Werner*, 170 Wn.2d 333, 337, 241 P.3d 410 (2010). This approach includes both an objective and a subjective test. *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997).

The subjective test requires the court to "place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances the defendant knew when the act occurred." *State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). The objective test requires the court to "determine what a reasonable person would have done if placed in defendant's situation." *Id*. "Accordingly, the degree of force used in self-defense is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant." *Walden*,

5

131 Wn.2d at 474. Relevant here, deadly force may be used in self-defense only if the defendant reasonably believes he is threatened with death or great personal injury. *Id.*

III.    ANALYSIS

As an initial matter, H.R.W. does not assign error to any particular finding of fact; therefore, they are verities on appeal. *K.H.-H.*, 188 Wn. App. at 418. Instead, H.R.W. appears to argue that the juvenile court's findings do not support the conclusion that the State disproved self-defense beyond a reasonable doubt. Accordingly, our inquiry is limited to whether the unchallenged findings of fact support the following conclusion of law:

> 2.11 [H.R.W.] acting to defend himself in a reasonable way would have been lawful. However, since a reasonable person, standing in the shoes of [H.R.W.]—in a high school courtyard with teachers nearby—would not believe the fight was going to escalate into a life threatening altercation or an altercation where he would suffer great personal injury, [H.R.W.'s] decision to intentionally and immediately arm himself with a knife and repeatedly stab JS (even while JS was getting up after a teacher arrived) was entirely unreasonable and the State has proven the unreasonableness and unlawfulness of [H.R.W.'s] use of the knife beyond any reasonable doubt. As such [H.R.W.] is guilty of the lesser included offense of Assault in the Second Degree.

CP at 41-42.

Here, the unchallenged findings show that there was a substantial size difference between J.S. and H.R.W. However, the findings also state that the second altercation occurred in the high school courtyard around fifth period. Based on our standard of review, it is reasonable to infer that teachers were nearby to put a stop to the fight–indeed a teacher did so. The findings also show that J.S. was neither armed with nor threatened to use a weapon. Additionally, H.R.W. had no knowledge of any particularly violent tendencies of J.S. because the two combatants were unacquainted with each other prior to these two altercations. The findings further show that, while J.S. repeatedly punched H.R.W. from a superior position, H.R.W. responded by stabbing and only stabbing. In other words, at no point did H.R.W. attempt to use any other method to defend

himself, but instead instantly resorted to using deadly force. Furthermore, the findings show that H.R.W. admitted to stabbing J.S. in the neck after he had ceased the striking when a teacher arrived. And 30 minutes after the second altercation, H.R.W. posted a picture on social media showing himself uninjured and claiming that J.S. "can't hit hard." CP at 40.

Under these circumstances, a reasonable person standing in H.R.W.'s shoes would not have reasonably believed that the fight was going to escalate into a life-threatening altercation or an altercation where great personal injury would result. Therefore, H.R.W.'s use of the knife during the schoolyard fistfight was more force than was reasonably necessary. Accordingly, the findings support the conclusion that the State disproved self-defense beyond a reasonable doubt.

H.R.W. argues that the juvenile court erred in applying the law of self-defense because it failed to acknowledge any facts or circumstances from H.R.W.'s perspective and failed to use those facts and circumstances to determine if his conduct was objectively reasonable. We disagree because the court's findings of fact and conclusions of law clearly demonstrate that it viewed the facts and circumstances from H.R.W.'s perspective. To the extent H.R.W. claims that the court erred by failing to enter findings regarding his subjective beliefs, that assertion essentially goes to court's weighing of credibility and the persuasiveness of the evidence. Those determinations will not be disturbed on review. *K.H.-H.*, 188 Wn. App. at 418.

H.R.W. also argues that the juvenile court erroneously penalized him for arming himself with the knife and erred in concluding that he should have used other physical options. We disagree because it is well-established in Washington that the amount of force used must not be more than is necessary. *Walden*, 131 Wn.2d at 474; RCW 9A.16.010(1). As explained above, under these circumstances, the findings support the conclusion that no reasonable person standing in H.R.W.'s shoes would have reasonably believed that a schoolyard fistfight with teachers nearby

would escalate into an altercation where great personal injury would result so as to justify the use of deadly force.

H.R.W. appears to rely on *State v. George*, 161 Wn. App. 86, 249 P.3d 202 (2011), to argue that he was subjectively and objectively reasonable in his actions. However, H.R.W.'s reliance on *George* is misplaced. *George*'s holding is limited to establishing when a defendant is entitled to a jury instruction submitting consideration of a self-defense claim to the finder of fact in a jury trial: the jury. It's holding is inapplicable here. But H.R.W refers to *George* as an example of the types of facts justifying consideration of self-defense by a trier of fact. But H.R.W.'s argument presupposes that the court here did not consider self-defense. Clearly the trial court *did* consider self-defense and in doing so determined that it did not apply. But even if *George* is read to require a conclusion that on its facts, self-defense is conclusively established—something we do not agree *George* stands for—*George* is still unhelpful to H.R.W. because its facts are a departure from what is before us here.

In *George*, we highlighted additional facts present besides the defendant's fear of his opponent's size and demeanor. In particular, the defendant's opponent dragged the defendant back into the earlier vulnerable position when the defendant tried to escape the assault, and continued assaulting the defendant even after the defendant displayed a firearm as a deterrent measure. 161 Wn. App. at 91-92. There are no analogous facts here. Instead, H.R.W. was involved in a nine second assault, where he fought back with a deadly weapon as a first resort, stabbing even after the threat had been eliminated by involvement of an authority figure. Again, a far cry from the facts of *George*. H.R.W.'s argument is unavailing.

CONCLUSION

Based on the above, we hold that the State presented sufficient evidence to sustain H.R.W.'s adjudication of guilt for assault in the second degree. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, P.J.

Price, J.